**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan P. Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN PRESCOTT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PROSPER FUNDING, LLC, and PROSPER MARKETPLACE, INC.<br><br>Defendants. | Case No. 3:25-cv-10594<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Steven Prescott, individually and on behalf of all others similarly situated, ("Plaintiff" or "Mr. Prescott") brings this Action against Prosper Funding LLC ("Prosper Funding") and Prosper Marketplace, Inc. ("Prosper Marketplace") (collectively, "Defendants" or "Prosper"). Plaintiff's allegations are based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein, after a reasonable opportunity for discovery.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## INTRODUCTION

1. Prosper is an online, peer-to-peer lending platform that connects creditworthy borrowers seeking personal loans with individual or institutional investors. Through its marketplace model, Prosper provides consumers access to financing for purposes ranging from debt consolidation to medical expenses and other major life events. The platform features a streamlined online application process and offers midsize loan amounts from $2,000 to $50,000, often at relatively high APRs.

2. To apply for or obtain loans from Prosper, customers and applicants are required to entrust Prosper Funding with their highly sensitive and personally identifiable information ("PII" or "Private Information"), which Prosper uses to engage in its usual business activities. Prosper understands that it has an enormous responsibility to protect the data it collected, assuring its customers and applicants that it "uses significant safeguards, including physical, technical (electronic), and operational controls to protect your personal information"[1] and that "[e]nsuring that Prosper is private and safe is our highest priority."[2] Despite these assurances to its customers and applicants, Prosper failed to protect the very customer information it was entrusted, compromising the personal information of millions of its customers and applicants (the "Data Breach"), announced by Defendants on September 17, 2025.[3]

3. Prosper failed to properly secure and safeguard the highly valuable PII of its customers and applicants, including their names, Social Security Numbers, dates of birth, bank account numbers, driver's license numbers, birth certificates, passport numbers, tax information, and payment card numbers, as well as potentially other highly sensitive information.[4] Prosper also failed to comply with industry standards to protect information systems that contain Private Information and failed to provide timely and adequate notice to Plaintiff and other members of the

---

[1] *Prosper Privacy Policy & Federal Privacy Notice*, PROSPER, https://www.prosper.com/legal/privacy-policy (last visited Dec. 10, 2025).
[2] *Privacy and Security at Prosper*, PROSPER, https://www.prosper.com/legal/security (last visited Dec. 10, 2025).
[3] *Prosper Notice of Data Breach*, PROSPER, https://www.prosper.com/blog/prosper-notice-of-data-breach (last visited Dec. 10, 2025).
[4] *Id.*

Class that their Private Information had been accessed and compromised.

4. As a result of Prosper's inadequate security and breach of its duties and obligations, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unauthorized criminal third party. Plaintiff and Class Members have suffered injuries as a direct and proximate result of Prosper's conduct. These injuries include: (i) out-of-pocket expenses associated with preventing, detecting, and remediating identity theft, social engineering, and other unauthorized use of their Private Information; (ii) opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iii) the continued, long term, and certain increased risk that unauthorized persons will access and abuse Plaintiff's and Class Members' Private Information; (iv) the continued and certain increased risk that the Private Information that remains in Defendants' possession is subject to further unauthorized disclosure for so long as Prosper fails to undertake proper measures to protect the Private Information; (v) invasion of privacy and increased risk of fraud and identity theft; (vi) theft of their Private Information and the resulting loss of privacy rights in that information; (vii) diminution in value and/or lost value of Private Information, a form of property that Prosper obtained from Plaintiff and Class Members. This action seeks to remedy these failings and their consequences. Plaintiff and Class Members have a continuing interest in ensuring that their Private Information is and remains safe, and they should be entitled to injunctive and other equitable relief.

5. Even the most basic Private Information becomes especially valuable to cybercriminals to create seemingly legitimate, personalized phishing scams. This exfiltrated personal data, the full extent of which Prosper has failed to disclose to the public, allows hackers to gain a clear image of each individual and track their whereabouts, leading hackers to each victim's behavior and background. The combined exfiltrated data effectively provides criminals with a key to their personal lives, making it easy to match additional data, gaining access to their personal accounts and insight on their preferences. Hackers are now able to build a three-dimensional picture and thereby exploit Prosper's customers and applicants.

6. Prosper has disregarded the rights of Plaintiff and Class Members by, inter alia, failing to take adequate and reasonable measures to ensure its data systems were protected against

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Private Information; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to properly train its staff and employees on proper security measures.

7. In addition, Prosper failed to properly monitor its computer network and systems that housed the Private Information. Had Prosper properly monitored these electronic and cloud-based systems, it would have discovered the intrusion sooner or prevented it altogether.

8. Prosper has also been unjustly enriched. Prosper should have invested a greater portion of its funds to implement proper data management and security, including proper and safe storage of Plaintiff's and Class Members' Private Information. Because Prosper failed to implement data management and security measures sufficient to protect that data and comply with industry standards, the principles of equity and justice demand that Prosper not be permitted to retain the value Plaintiff and Class Members paid Prosper for protection they did not receive.

9. Plaintiff brings this lawsuit on behalf of himself and all those similarly situated to address Prosper's inadequate safeguarding of Class Members' Private Information that they collected and maintained. To remedy these violations of law, Plaintiff and Class Members thus seek actual damages, statutory damages, restitution, and injunctive and declaratory relief (including significant improvements to Prosper's data security protocols and employee training practices), reasonable attorneys' fees, costs, and expenses incurred in bringing this action, and all other remedies this Court deems just and proper.

## PARTIES

### I. <u>Plaintiff</u>

10. Plaintiff Steven Prescott is a natural person and citizen of California. Plaintiff only allowed Defendants to maintain, store, and use his Private Information because he reasonably expected that Defendants would use proper security measures to protect his Private Information and prevent its access by unauthorized third parties. As a result of this expectation, Plaintiff entrusted his Private Information to Prosper, and his Private Information was within the possession and control of Prosper at the time of the Data Breach. Had Plaintiff been informed of Defendants'

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

insufficient data security measures to protect his Private Information, he would not have willingly provided his Private Information to Prosper.

11. Plaintiff previously applied for a loan with Prosper Lending, and as part of that application, provided it with his PII, including his Social Security Number and date of birth. Plaintiff only provided this information to Prosper because he reasonably believed that it would ensure his information was secure and would not lose or disclose it. However, this Private Information was later exfiltrated by cybercriminals who had obtained it from Prosper's computer systems due to its inadequate cybersecurity practices.

12. Plaintiff received a data breach notification email from Prosper on December 9, 2025. (Exhibit A, Data Breach Notification).

13. As a result of the Data Breach, Plaintiff has been further injured by the damages to and loss in value of his Private Information—a form of intangible property that Plaintiff entrusted to Defendants. This information has inherent value that Plaintiff was deprived of when his Private Information was negligently made accessible to and intentionally and maliciously exfiltrated by cybercriminals.

14. When Plaintiff's Private Information was accessed and obtained by a third party without his consent or authorization, Plaintiff suffered injury from a loss of privacy.

15. Given the highly sensitive nature of the information involved, the Data Breach has also caused Plaintiff to suffer imminent harm arising from a substantially increased risk of additional fraud, identity theft, financial crimes, and misuse of his Private Information. This highly sensitive information is now in the hands of criminals as a direct and proximate result of Defendants' misconduct. It is also possible that other forms of information not yet disclosed by Defendants were also lost in the breach.

16. As a result of the actual harm Plaintiff has suffered and the imminent and substantial risk of future harm, the Data Breach has forced Plaintiff to spend significant time and energy dealing with issues related to the Data Breach, including self-monitoring his accounts to ensure no fraudulent activity has occurred, dealing with a marked increase in scam and phishing emails that occurred after the breach, and changing identifying information and passwords for his accounts.

Much of the time and energy that Plaintiff expended, which has been lost forever and cannot be recaptured, was spent at the Defendants' direction.

17. The substantial risk of imminent harm and loss of privacy has also caused Plaintiff to suffer stress, fear, emotional distress, and anxiety.

18. Defendants acknowledged the risk posed to Class Members and their Private Information as a result of the Data Breach, encouraging consumers to "remain vigilant against threats of identity theft or fraud and to regularly review and monitor your account statements and credit history for any signs of unauthorized transactions or activity."[5]

**II. <u>Defendants</u>**

19. Prosper Funding LLC is a California limited liability company, with its principal place of business located at 221 Main Street, 3rd Floor San Francisco, CA 94105. Prosper Funding conducts business throughout the United States. Prosper Funding is a subsidiary of Defendant Prosper Marketplace, Inc.

20. Prosper Marketplace, Inc. is incorporated in Delaware, with its principal place of business located at 221 Main Street Suite 300 San Francisco, CA 94105. Prosper Marketplace conducts business throughout the United States.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332(d) because this is a class action where the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from the Defendants. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

22. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District: Defendants' principal place of business is located in this District from where their board of

[5] *Prosper Notice of Data Breach*, PROSPER, https://www.prosper.com/blog/prosper-notice-of-data-breach (last visited Dec. 10, 2025).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

directors and/or officers direct Defendants' activities including to their actions and inactions leading to the data breach at issue; Defendants gain revenue and profits from doing business in this District; Class Members were affected by the breach from Prosper's actions and inactions directed from this District.

## FACTUAL ALLEGATIONS

23. Prosper is a financial services company and peer-to-peer lending platform. Prosper collects and processes the personal data of its customers and applicants. To do business with Prosper, customers and applicants are forced to entrust it with their Private Information.

24. Prosper Marketplace, Inc. operates the online lending platform and manages borrower and investor interactions, while Prosper Funding, LLC is a separate legal entity responsible for the financial and legal obligations arising from the transactions facilitated through the platform.

25. The information collected and stored by Prosper includes, but is not limited to, customers' and applicants' names, Social Security Numbers, dates of birth, bank account numbers, driver's license numbers, birth certificates, passport numbers, tax information, and payment card numbers, as well as potentially other highly sensitive information

26. Prosper holds itself as a trustworthy company, which recognizes and values its customers' and applicants' privacy and personal information and has repeatedly assured its customers and applicants that it "follow[s] very strict guidelines to protect your privacy" and "works hard to ensure a safe borrowing and lending environment for all of our members."[6]

27. Plaintiff and other similarly situated customers and applicants relied to their detriment on Prosper's uniform representations and omissions regarding data security, including Prosper's failure to alert customers and applicants that its security protections were inadequate, and that Prosper would forever store Plaintiff's and Class Members' Private Information, failing to archive it, protect it, or at the very minimum warn consumers of the anticipated and foreseeable data breach.

28. Plaintiff and other similarly situated customers and applicants trusted Prosper with their sensitive and valuable Private Information.

---

[6] *Privacy and Security at Prosper*, PROSPER, https://www.prosper.com/legal/security (last visited Dec. 10, 2025).

29. Had Prosper disclosed to Plaintiff and their other customers and applicants that their data systems were not secure and were vulnerable to attack, Plaintiff would not have provided it with his Private Information.

**I. <u>The Data Breach</u>**

30. At all material times, Prosper failed to maintain proper security measures despite its promises of safety and security to consumers.

31. On September 1, 2025, Prosper claims that it discovered unauthorized activity on their systems. In investigating the incident with an unidentified cybersecurity firm, it identified evidence that, between June and August 2025, data containing personal information was obtained through queries on company databases that store customer and applicant data. Prosper did not notify its customers and applicants then, nor make any announcements to alert them of this major security issue. Prosper waited until September 17, 2025, to announce that the Data Breach had occurred and waited further until December 9, 2025, to provide direct notice to affected individuals.

32. In the Data Breach notification statement, Prosper does not disclose exactly how many customers' and applicants' Private Information was breached. Instead, Prosper downplayed the extent of the Data Breach, and the likely harm affected victims may experience.

**II. <u>Data Breaches and the Market for PII</u>**

33. It should be no surprise that in today's digital economy, "a new form of black gold has emerged, one that is intangible yet infinitely more powerful: data."[7] Personal data has become a "precious commodity," at the forefront of technological innovation.[8] Data is a pivotal economic asset and form of capital, allowing companies rich in it to drive competition. Considering the implications of "big data" in corporate America and the consequences of cyber thefts, which include heavy prison sentences, the value of data is axiomatic. Even this obvious risk-to-reward analysis illustrates beyond doubt that personal information has considerable market value.

[7] Lawrence Teixeira, *The New Black Gold: How Data Became the Most Valuable Asset in Tech*, MEDIUM (Feb 12, 2024), http://tiny.cc/fjas001.
[8] *Id.*



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

34. In a consumer-driven world, the ability to capture and use consumer data to shape products, solutions, and the buying experience is critically important to a business's success.[9] Research shows that organizations who "leverage customer behavior insights outperform peers by 85 percent in sales growth and more than 25 percent in gross margin"[10] and that "[d]ata-driven companies are 23 times more likely to top their competitors in customer acquisition, about 19 times more likely to stay profitable and nearly seven times more likely to retain customers."[11]

35. Indeed, an entire economy exists related to the value of personal data. In 2023, the big data technology market was valued at roughly $349 billion, and that value is expected to grow from roughly $397 billion in 2024 to $1,194 billion by 2032.[12]

36. In 2013, the Organization for Economic Cooperation and Development ("OECD") even published a paper entitled "Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value."[13] In this paper, the OECD measured prices demanded by companies concerning user data derived from "various online data warehouses."[14] OECD indicated that "[a]t the time of writing, the following elements of personal data were available for various prices: USD 0.50 cents for an address, USD 2 [i.e. $2] for a date of birth, USD 8 for a social security number (government ID number), USD 3 for a driver's license number and

[9] Laci Loew, *Data Differentiation: Why Consumer Data Is A Modern Organization's Real Competitive Advantage*, FORBES (October 2, 2024), https://www.forbes.com/councils/forbescommunicationscouncil/2024/10/02/data-differentiation-why-customer-data-is-a-modern-organizations-real-competitive-advantage/

[10] Brad Brown, Kumar Kanagasabai, Prashant Pant & Goncalo Serpa Pinto, *Capturing value from your customer data*, MCKINSEY (Mar. 15, 2017), https://www.mckinsey.com/business-functions/quantumblack/our-insights/capturing-value-from-your-customer-data

[11] Laci Loew, *Data Differentiation: Why Consumer Data Is A Modern Organization's Real Competitive Advantage*, FORBES (October 2, 2024), https://www.forbes.com/councils/forbescommunicationscouncil/2024/10/02/data-differentiation-why-customer-data-is-a-modern-organizations-real-competitive-advantage/.

[12] *Big Data Technology Market Size, Share & Industry Analysis*, FORTUNE BUSINESS INSIGHTS (Jan. 2025), https://www.fortunebusinessinsights.com/industry-reports/big-data-technology-market-100144

[13] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD DIGITAL ECONOMY PAPERS, NO. 220 (Apr. 2, 2013), https://www.oecdilibrary.org/docserver/5k486qtxldmq-en.pdf

[14] *Id.* at 25.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

USD 35 for a military record. A combination of address, date of birth, social security number, credit record and military [record] is estimated to cost USD 55."[15]

37. Consumer concern for how companies use their data is on the rise. According to Pew Research, 81% of U.S. adults are concerned about how companies use the data they collect about them.[16] Consumers increasingly say they don't understand what companies are doing with their data, with 67% of U.S. adults saying they understand little to nothing about what companies are doing with their personal data, up from 59% in 2019.[17]

38. When a victim's data is compromised in a breach, the victim is exposed to serious ramifications regardless of the sensitivity of the data, including but not limited to identity theft, fraud, decline in credit, inability to access healthcare, as well as legal consequences.[18]

39. The U.S. Department of Justice's Bureau of Justice Statistics has found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that resolution of those problems could take more than a year.[19] Indeed, data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.

40. The U.S. Government Accountability Office (GAO) has concluded that it is common for data thieves to hold onto stolen data for extended periods of time before utilizing it for identity theft.[20] In the same report, the GAO noted that while credit monitoring services can assist with detecting fraud, those services do not stop it.[21]

---

[15] *Id.*
[16] *How Americans View Data Privacy,* PEW RESEARCH CENTER (Oct. 18, 2023), https://www.pewresearch.org/internet/2023/10/18/how-americans-view-data-privacy/; *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.
[17] Id.
[18] *Data Breach Response: A Guide for Business*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/data-breach-response-guide-business
[19] *Victims of Identity Theft*, U.S. DEPARTMENT OF JUSTICE, (Sept. 2015), http://www.bjs.gov/content/pub/pdf/vit14.pdf
[20] *Data Breaches – Range of Consumer Risks Highlights Limitations of Identity Theft Services*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE, https://www.gao.gov/assets/700/697985.pdf
[21] *Id.*

41. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and financial fraud.[22] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII on multiple underground Internet websites, commonly referred to as the "dark web."

42. Further, criminals often trade stolen PII on the "cyber black-market" for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

43. When companies entrusted with personal data fail to implement industry best practices, cyberattacks and other data exploitations can go undetected for a long period of time. This worsens the ramifications and can even render the harm irreparable.

44. PII is a valuable commodity for which a black market exists on the dark web, among other places. Personal data can be worth from $1,000 or more on the dark web[23] and the legitimate data brokerage industry is valued at more than $250 billion.

45. In this black market, criminals seek to sell the spoils of their cyberattacks to identity thieves who desire the data to extort and harass victims, take over victims' identities in order to open financial accounts and otherwise engage in illegal financial transactions under the victims' names.

46. PII has a distinct, high value—which is why legitimate companies and criminals seek to obtain and sell it. As alleged in more detail below, a growing market is for individuals' data.[24]

47. In a study authored by Tim Morey, researchers studied the value that 180 internet users placed on keeping personal data secure.[25] Social security numbers and government ID information were valued at $240 per year. *See true and correct findings of summary below*:

[22] *What To Know About Identity Theft*, FEDERAL TRADE COMMISSION, https://consumer.ftc.gov/articles/what-know-about-identity-theft

[23] Ryan Smith, *Revealed-how much is personal data worth on the dark web?*, INSURANCE BUSINESS MAGAZINE, (May 2023), https://www.insurancebusinessmag.com/ca/news/cyber/revealed--how-much-is-personal-data-worth-on-the-dark-web-444455.aspx.

[24] *Id.*

[25] Tim Morey, *What's Your Personal Data Worth?*, DESIGN MIND, (Jan. 2011), https://web.archive.org/web/20131206000037/http://designmind.frogdesign.com/blog/what039s-your-personal-data-worth.html




48. Prosper knew or should have known that Plaintiff's and Class Members' Private Information is valuable, both to legitimate entities, like Prosper, and to cybercriminals.

49. Prosper knew or should have known that Plaintiff and Class Members would reasonably rely upon and trust Prosper's promises regarding security and safety of their data and systems, and that their valuable Private Information would be protected.

50. By collecting, using, and monitoring Plaintiff's and other consumers' Private Information, and failing to protect it by maintaining inadequate security systems, failing to properly archive the Private Information, allowing access of third parties, and failing to implement adequate security measures, Prosper caused harm to Plaintiff and other consumers.

## III. <u>Prosper's Duty to Safeguard Private Information</u>

51. Prosper collects, receives, and accesses consumers' extensive individually identifiable information. This Private Information includes full names, dates of birth, Social Security numbers, other contact information, government-issued identification information, bank account information, and more.

52. Prosper was prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that an entity's failure to maintain reasonable and appropriate data security for individuals' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

53. The FTC has brought enforcement actions against entities engaged in commerce for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

54. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all decision-making.[26]

55. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.[27] The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

56. The FTC further recommends that entities not maintain PII longer than needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[28]

57. Furthermore, the FTC requires that entities like Prosper conduct risk assessments, implement and periodically review access control, encrypt consumer information, implement multi-factor authentication, dispose of consumer information securely, maintain a log of authorized users' activity and keep an eye out of unauthorized access, train employees regarding security awareness, conduct audits, penetration testing, and system wide scans regularly to test for publicly known

---

[26] *Start With Security*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf
[27] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business
[28] *Start With Security*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

security vulnerabilities – all of which if properly implemented would have allowed Prosper to prevent this Data Breach.

58. Prosper failed to properly implement basic data security practices, allowing for this data breach to occur, victimizing millions of people – by failing to adhere to many of the FTC protocols and allowing access to cybercriminals who was able to exfiltrate substantial amounts of consumer data. Prosper should have had a multifaceted security protocol in place but failed to do so. Had Prosper maintained proper protocols and regularly conducted audits to ensure its vulnerabilities and training, it would have prevented this Data Breach.

59. Plaintiff and Class Members had the reasonable expectation that Prosper would comply with its obligations to keep such information confidential and secure from unauthorized access.

60. Prosper's failure to provide adequate security measures to safeguard Plaintiff's and Class Members' Private Information is especially egregious because it operates in a field which has recently been a frequent target of scammers attempting to gain access to confidential PII and other highly sensitive information.

## IV. Impact of the Data Breach on Consumers

61. Plaintiff and the Class have suffered actual harm as a result of Prosper's conduct. Prosper failed to institute adequate security measures that led to a data breach. This breach allowed hackers to access the Private Information, including the Social Security numbers and dates of birth of Plaintiff and the Class. Now that the Private Information has been accessed and absconded with, it is available for criminal elements to sell or trade and will continue to be at risk for the indefinite future. In fact, the U.S. Government Accountability Office found that, "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[29]

62. Plaintiff and Class Members are now vulnerable to a full gamut of cybercrimes, loss in value of their property, and have been forced to take remedial action, as listed below:

### Digital Phishing Scams

[29] *See* U.S. GOV'T ACCOUNTABILITY OFF. REPORT TO CONGRESSIONAL REQUESTERS 29 2007. https://www.gao.gov/new.items/d07737.pdf.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

63. Phishing scammers use emails and text messages to trick people into giving them their personal information, including but not limited to passwords, account numbers, and social security numbers. Phishing scams are frequently successful, and the FBI reported that people lost approximately $18.7 million to such scams in 2023 alone.[30]

64. Prosper knew or should have known of the dangers of digital phishing scams. When Personal Information is employed in a social engineering scheme, criminals can gain unfettered access to individuals, or corporate databases, as the Data Breach itself evinces.

65. Prosper's customers and applicants are now more likely to become victims of digital phishing attacks because of the compromised information.

**SIM-Swap**

66. The data leak can also lead to SIM-swap attacks against Plaintiff and the Class Members. A SIM-swap attack occurs when the scammers trick a telephone carrier to porting the victim's phone number to the scammer's SIM card. By doing so, the attacker is able to bypass two-factor authentication accounts, as are used to access cryptocurrency wallets and other important accounts. The type of personal information that has been leaked poses a profound tangible risk of SIM-swap attacks for the Class.

67. Prosper's customers and applicants are now more likely to become victims of SIM Swap attacks because of the released personal information.

**Loss of Time**

68. As a result of this breach, Plaintiff and impacted consumers will suffer unauthorized email solicitations and experience a significant increase in suspicious phishing scam activity via email, phone calls, and text messages following the breach. In addition, Plaintiff, as a result of the breach, has spent significant time and effort researching the breach, monitoring his accounts for fraudulent activity, and dealing with unsolicited phishing and scam emails.

---

[30] *Internet Crime Report*, FEDERAL BUREAU OF INVESTIGATION, (2023), https://www.ic3.gov/annualreport/reports/2023_ic3report.pdf scams

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**Threat of Identity Theft**

69. As a direct and proximate result of Prosper's breach of confidence, and failure to protect Private Information, Plaintiff and the Class have also been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuse of this Private Information, resulting in ongoing monetary loss and economic harm, loss of value of privacy and confidentiality of the stolen Private Information, illegal sales of the compromised Private Information on the black market, mitigation expenses and time spent on credit monitoring, identity theft insurance, credit freezes/unfreezes, expenses and time spent in initiating fraud alerts, contacting third parties; decreased credit scores, lost work time, and other injuries. Prosper, through its misconduct, has enabled numerous bad actors to sell and profit off of Private Information that belongs to Plaintiff.

**Out of Pocket Costs**

70. Plaintiff is now forced to research and subsequently acquire credit monitoring and reasonable identity theft defensive services and maintain these services to avoid further impact. Plaintiff anticipates spending out of pocket expenses to pay for these services.

**Diminution in Value of a Valuable Property Right**

71. Because personal data is valuable personal property, market exchanges now exist where internet users like Plaintiff and Class Members can sell or monetize their own personal data.

72. In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to legitimate marketers or app developers.[31] For example, consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[32]

73. Accordingly, as a result of the Data Breach, Plaintiff lost the sale value of his Private Information and the opportunity to control how it is used. That a threat actor specifically targeted Prosper demonstrates just how valuable Plaintiff's Private Information can be to hackers and the significant value of Plaintiff's Private Information to cybercriminals.

[31] *See*, *e.g.*, *The Personal Data Revolution*, DATACOUP, https://datacoup.com/

[32] Nielsen Computer & Mobile Panel, *Frequently Asked Questions*, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**Summary of Actual Economic and Noneconomic Damages**

74. In sum, Plaintiff and similarly situated consumers were injured as follows:

i. Theft of their Private Information and the resulting loss of privacy rights in that information;

ii. Improper disclosure of their Private Information;

iii. Loss of value of their Private Information;

iv. The amount of ongoing reasonable identity defense and credit monitoring services made necessary as mitigation measures;

v. Prosper's retention of profits attributable to Plaintiff's and other customers' and applicants' Private Information that Prosper failed to adequately protect;

vi. Economic and non-economic impacts that flow from imminent, and ongoing threat of fraud and identity theft to which Plaintiff is now exposed;

vii. Ascertainable out-of-pocket expenses and the value of Plaintiff's time allocated to fixing or mitigating the effects of this data breach; and,

viii. Emotional distress, and fear associated with the imminent threat of harm from the continued phishing scams and attacks as a result of this data breach.

**Prosper Should Have Invested in Appropriate & Necessary Data Security**

75. In the years immediately preceding the Data Breach, Prosper knew or should have known that their computer systems were a target for cybersecurity attacks.

76. The FBI, FTC, GAO, U.S. Secret Service, United States Cybersecurity and Infrastructure Security Agency, State Attorney General Offices and many other government and law enforcement agencies, and hundreds of private cybersecurity and threat intelligence firms, have issued warnings that put Prosper on notice, long before the Data Breach, that (1) cybercriminals were ferociously aggressive in their pursuit of large collections of Private Information like that in possession of Defendant; (2) cybercriminals were selling large volumes of Private Information and corporate information on Dark Web portals; and (3) the threats were increasing.

77. Had Prosper been diligent and responsible, it would have implemented the basic cyber security steps necessary to protect the Private Information in its possession, by addressing the key vulnerabilities:

- Lack of a complete risk assessment, including internal, third-party, and cloud-based systems and services;
- Not promptly patching known/public vulnerabilities, and not having a way to process vulnerability reports;
- Misconfigured devices/servers;
- Unencrypted data and/or poor encryption key management and safeguarding;
- Use of end-of-life (and thereby unsupported) devices, operating systems, and applications;
- Employee errors and accidental disclosures — lost data, files, drives, devices, computers, improper disposal;
- Failure to block malicious email; and
- Users succumbing to business email compromise (BEC) and social exploits.[33]

78. Considering the information and warnings readily available to Prosper before the Data Breach, Prosper had reason to be on guard and to increase data security to avoid an attack.

79. Prior to the Data Breach, Prosper thus knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' Private Information could be accessed, exfiltrated and utilized by nefarious individuals as the result of a cyberattack.

80. Data security experts advise that "the vast majority of data breaches are preventable" if companies follow widely-available advice on data security practices, including "continually audit[ing] and reevaluat[ing]" their data security practices; being aware of and working proactively to counter cybercriminals' evolving techniques and approaches; and training and re-training their employees.[34]

[33] Gretel Egan, *OTA Report Indicates 93% of Security Breaches Are Preventable*, PROOFPOINT (Feb. 7, 2018), https://www.proofpoint.com/us/security-awareness/post/ota-report-indicates-93-security-breaches-are-preventable.

[34] Nate Nead, *How To Prevent A Data Breach In Your Company*, FORBES (Jul. 30, 2021), https://www.forbes.com/sites/forbesbusinesscouncil/2021/07/30/how-to-prevent-a-data-breach-in-your-company/?sh=3828f7b918da



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**CLASS ALLEGATIONS**

81. Under Fed. R. Civ. P. 23(b)(2), (b)(3), and (c)(4), Plaintiff seeks certification of a nationwide class defined as follows (the "Nationwide Class"):

> **Nationwide Class:** All individuals whose Private Information was accessed, compromised, or stolen in the Data Breach announced by Prosper Marketplace in September 2025, including all those who received notice of the breach.

82. Under Fed. R. Civ. P. 23(b)(2), (b)(3), and (c)(4), Plaintiff further seeks certification of a California subclass defined as follows (the "California Subclass"):

> **California Subclass:** All individuals in the state of California whose Private Information was accessed, compromised, or stolen in the Data Breach announced by Prosper Marketplace in September 2025, including all those who received notice of the breach.

83. The Nationwide Class and California Subclass shall be collectively referred to as the "Class."

84. Excluded from the Class and Subclass are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants' officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

85. **<u>Numerosity</u>**. The Class and Subclass is comprised of millions of Prosper customers and applicants who have either lent money through the Prosper platform, received loans via Prosper in the past, or had applied to do so, and were part of the Data Breach. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

86. **<u>Commonality and Predominance</u>**. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that members of the Class and Subclass were exposed to the same common and uniform false and misleading advertising and omissions. The questions of law and fact common to the Class predominate over questions which may affect individual Class members. Common questions of law and fact include, but are not

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

limited to, the following:

a. Whether Prosper's failure to implement effective security measures to protect Plaintiff's and the Class's Private Information was negligent;

b. Whether Prosper's conduct is an unlawful business act or practice within the meaning of California Business and Professions Code § 17200, et seq.;

c. Whether Prosper violated any statutory duties under the FTC Act, 15 U.S.C. §45, Cal. Civ. Code §1798.81.5, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100.

d. Whether Prosper represented to Plaintiff and the Class that it would protect Plaintiff's and the Class Members' Private Information;

e. Whether Prosper owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

f. Whether Prosper breached a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

g. Whether Class Members' Private Information was accessed, compromised, or stolen in the Data Breach;

h. Whether Prosper's conduct caused or resulted in damages to Plaintiff and the Class;

i. Whether Prosper failed to notify the public of the breach in a timely and adequate manner;

j. Whether Prosper knew or should have known that its systems, including but not limited to software, training protocols, and policies, left it vulnerable to the Data Breach;

k. Whether Prosper adequately addressed the vulnerabilities that allowed for the Data Breach; and

l. Whether, as a result of Prosper's conduct, Plaintiff and the Class are entitled to damages and relief.

87. **Typicality**. Plaintiff's claims are typical of the claims of the proposed Class and Subclass, as Plaintiff and Class Members were harmed by Prosper's uniform unlawful conduct.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

88. **Adequacy of Class Representative.** Plaintiff will fairly and adequately represent and protect the interests of the proposed Class and Subclass. Plaintiff seeks relief for all members of the Class and will put the interests of the Class ahead of his individual interests. Plaintiff does not have conflicts of interest with any other member of the Class.

89. **Adequacy of Class Counsel.** Plaintiff has retained competent and experienced counsel, who have extensive experience in class action litigation and other complex litigation, both in California courts, as well as state and federal courts throughout the country.

90. **Ascertainability.** The Class and Subclass are identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions, and by internet publication, radio, newspapers, and magazines.

91. **Superiority and Manageability.** A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually. The litigation and resolution of the Class's claims are manageable. Individual litigation of the legal and factual issues raised by Prosper's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

92. **Injunctive or Declaratory Relief.** Prosper has acted on grounds generally applicable to the entire Class and Subclass, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class and Subclass as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for Prosper.

93. Absent a class action, Prosper will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Class Members will continue to suffer losses and Prosper (and similarly situated companies) will be allowed to continue these violations of law and to retain the proceeds of their ill-gotten gains.

**COUNT ONE**

**NEGLIGENCE**

**(ON BEHALF OF THE NATIONWIDE CLASS)**

94. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

95. Plaintiff and the Class entrusted their Private Information to Prosper on the premise, and with the understanding, that it would safeguard their Private Information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

96. Prosper accepted possession of Plaintiff's and Class Members' Private Information for the purpose of performing its regular business operations.

97. Prosper owed a duty of care to Plaintiff and Class Members because it was foreseeable that its failure—to use adequate data security in accordance with industry standards for data security—would compromise their Private Information in a data breach. Here, this foreseeable danger came to pass.

98. Prosper had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if their Private Information was wrongfully disclosed.

99. Prosper's act of collecting, retaining, and storing Plaintiff's and Class Members' Private Information constitutes an affirmative act that created a high degree of risk that third parties would attempt to obtain the personal information.

100. Prosper owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Prosper knew or should have known would suffer injury-in-fact from Prosper's inadequate security practices. After all, Prosper actively sought and obtained Plaintiff's and Class Members' Private Information.

101. Prosper owed—to Plaintiff and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the Private Information in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access; and,

d. notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their Private Information.

102. Thus, Prosper owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

103. Prosper knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

104. Prosper had a special relationship with Plaintiff and Class Members, which is recognized by laws and regulations, as well as common law. Prosper was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach. Plaintiff and Class Members were compelled to entrust Prosper with their Private Information. At all relevant times, Plaintiff and Class Members reasonably believed that Prosper would take adequate security precautions to safeguard that information. Only Prosper had the ability to protect Plaintiff's and Class Members' Private Information it held.

105. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

106. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Prosper, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Prosper's duty to protect Plaintiff's and the Class Members' Private Information.

107. Prosper violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. The Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

108. The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendants holds vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the Private Information.

109. Private Information is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff and Class Members and the importance of exercising reasonable care in handling it. Despite the widespread knowledge of the risks of inadequately securing PII, Defendants designed and implemented its systems with inadequate safety and security protocol, leaving its systems vulnerable to access by unauthorized users.

110. Defendants improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

111. Defendants breached these duties as evidenced by the Data Breach.

112. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' Private Information by:

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

a. disclosing and providing access to this information to third parties; and,

b. failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

113. Defendants breached their duties by failing to exercise reasonable care in designing and implementing their IT systems and controls; in supervising their agents, contractors, vendors, and suppliers; and in handling and securing the personal information and Private Information of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injuries.

114. Defendants further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class Members' injuries-in-fact.

115. Defendants have admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

116. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, frustration, and emotional distress.

117. And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the dark web.

118. Prosper's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Prosper's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**COUNT TWO**

**NEGLIGENCE *PER SE***

**(ON BEHALF OF THE NATIONWIDE CLASS)**

119. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

120. Prosper's violation of the FTC Act also constitutes negligence per se, as those provisions are designed to protect individuals like Plaintiff and the Class Members from the harm associated with data breaches.

121. Prosper violated the FTC Act, which obligates companies to use reasonable measures to protect PII, by failing to comply with applicable industry standards, and by unduly delaying reasonable notice of the actual breach. Prosper's conduct was particularly unreasonable given the nature and amount of PII obtained and stored, the foreseeable consequences of the data breach, and the exposure of Plaintiff's and Class Members' sensitive PII.

122. Prosper's violations of the FTC rules and other applicable standards constitute negligence per se.

123. Plaintiff and Class Members are within the category of persons the FTC Act was intended to protect.

124. The harm that occurred as a result of the Data Breach described herein is the type of harm the FTC Act was intended to guard against.

125. As a direct and proximate result of Prosper's negligence per se, Plaintiff and Class Members have been damaged as described herein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their Private Information in Prosper's possession, and are entitled to damages in an amount to be proven at trial.

**COUNT THREE**

**INVASION OF PRIVACY**

**(ON BEHALF OF THE NATIONWIDE CLASS)**

126. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

127. Plaintiff and Class Members had a reasonable and legitimate expectation of privacy in their Private Information that Prosper failed to adequately protect against compromise from unauthorized third parties.

128. Prosper owed a duty to Plaintiff and Class Members to keep their Private Information confidential.

129. Prosper failed to protect, and released to unknown and unauthorized third parties, the Private Information of Plaintiff and Class Members.

130. By failing to keep Plaintiff's and Class Members' Private Information safe, knowingly utilizing unsecure systems and practices, Prosper unlawfully invaded Plaintiff's and Class Members' privacy by, among others, (i) intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) failing to adequately secure their Private Information from disclosure to unauthorized persons and/or third parties; and (iii) enabling the disclosure of Plaintiff's and Class Members' Private Information without consent.

131. Prosper knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider its actions highly offensive.

132. Prosper knew, or acted with reckless disregard, of the fact that organizations handling PII or other sensitive information are highly vulnerable to cyberattacks and that employing inadequate security and training practices would render them especially vulnerable to data breaches.

133. As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their Private Information was unduly frustrated and thwarted, thereby causing Plaintiff and the Class Members undue harm.

134. Plaintiff seeks injunctive relief on behalf of the Class, restitution, as well as any and all other relief that may be available at law or equity. Unless and until enjoined, and restrained by order of this Court, Prosper's wrongful conduct will continue to cause irreparable injury to Plaintiff and Class Members. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not ensure that Defendants take reasonable measures to protect Plaintiff's and Class Members' Private Information.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**COUNT FOUR**
**UNJUST ENRICHMENT**
**(ON BEHALF OF THE NATIONWIDE CLASS)**

135. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

136. Prosper funds its data security measures entirely from its general revenues.

137. Prosper benefitted by the conferral upon it of Plaintiff's and Class Members' Private Information and by its ability to retain, use and profit from that information.

138. Prosper also knew that Plaintiff's and Class Members' Private Information was private and confidential, and the value of this information was dependent on Prosper maintaining the privacy and confidentiality of this information

139. In exchange, Plaintiff and Class Members should have had their Private Information protected with adequate data security measures.

140. Prosper knew that Plaintiff and the Class conferred a benefit which it accepted, and through which Prosper was unjustly enriched. Prosper profited from these transactions and used Plaintiff's and the Class Members' Private Information for business purposes and to increase its revenues.

141. Prosper enriched itself by saving the costs it reasonably should have spent on the necessary data security measures to secure Plaintiff's and the Class Members' Private Information. Instead of providing the necessary level of security that would have prevented the Data Breach, Prosper instead calculated to increase its own profits at the expense of Plaintiff and the Class, by using ineffective security measures, failing to pay money for the much needed training of its employees, failing to conduct the audits, or implementing other security measures discussed above. Plaintiff and the Class suffered an injury as a direct and proximate result of Prosper's decision to prioritize its own profits over the requisite security and training.

142. Under the principles of equity and good conscience, Prosper should not be permitted to retain this economic benefit, because it gained this economic benefit by failing to implement appropriate data management and security measures as mandated by common law and statutory duties.

143. Plaintiff and the Class have no adequate remedy at law as discussed above.

144. Prosper should be compelled to disgorge its profits and/or proceeds that it unjustly received as a result of failing to properly secure Plaintiff's and Class Members' Private Information.

**COUNT FIVE**

**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

**(ON BEHALF OF THE NATIONWIDE CLASS)**

145. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

146. The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., authorizes this Court to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.

147. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

148. Prosper owes a duty of care to Plaintiff and Class Members which require it to adequately secure its Private Information when it chose to accept and store Plaintiff's and Class Members' Private Information.

149. Prosper still possesses Plaintiff's and Class Members' Private Information.

150. Prosper does not specify in the Data Breach notification posted on its website what specific and verifiable steps it has taken to prevent a similar breach from occurring again.

151. Plaintiff and Class Members are at risk of harm due to the exposure of their Private Information and Prosper's failures to address the security failings that lead to such exposure.

152. An actual controversy has arisen in the wake of the Data Breach regarding Prospect's present and prospective common law and other duties to reasonably safeguard Plaintiff's and Class Members' Private Information and whether Prosper is currently maintaining data security measures adequate to protect Plaintiff and the Class from further data breaches that compromise their Private Information.

153. Plaintiff and the Class, therefore, seek a declaration that (1) each of Prosper's existing security measures do not comply with its obligations and duties of care to provide reasonable



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

security procedures and practices appropriate to the nature of the information to protect consumers' Private Information, and (2) to comply with its duties of care, Prosper must implement and maintain reasonable security measures, including, but not limited to:

a. Prohibiting Prosper from engaging in the wrongful acts stated herein;

b. Requiring Prosper to implement adequate security protocols and practices to protect consumers' Private Information consistent with the industry standards, applicable regulations, and federal, state, and/or local laws;

c. Mandating the proper notice be sent to all affected consumers, and posted publicly;

d. Requiring Prosper to protect all data collected through any account creation requirements;

e. Requiring Prosper to delete, destroy, and purge the Private Information of Plaintiff and Class Members unless it can provide reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

f. Requiring Prosper to implement and maintain a comprehensive security program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' Private Information;

g. Requiring Prosper to engage independent third-party security auditors and conduct internal security audit and testing, including simulated attacks, penetration tests, and audits on its systems on a periodic basis;

h. Requiring Prosper to engage independent third-party security auditors and/or internal personnel to run automated security monitoring;

i. Requiring Prosper to create the appropriate firewalls, and implement the necessary measures to prevent further disclosure and leak of any additional information;

j. Requiring Prosper to conduct systematic scanning for data breach related issues;

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

k. Requiring Prosper to train and test their employees regarding data breach protocols, archiving protocols, and conduct any necessary employee background checks to ensure that only individuals with the appropriate training and access may be allowed to access the Private Information data; and,

l. Requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted.

154. The Court can, and should, issue corresponding prospective injunctive relief requiring Prosper to employ adequate security protocols consistent with the law and industry standards to protect Plaintiff's and Class Members' Private Information.

155. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of the Defendants' systems or networks. The risk of another breach is real, immediate, and substantial.

156. The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to the Defendants if an injunction is issued. If another data breach occurs, the Plaintiff and the Class will likely be subjected to fraud, identity theft, and other harms described herein. However, the cost to the Defendants of complying with an injunction by employing reasonable prospective data security measures is minimal given they have preexisting legal obligations to employ these measures.

**COUNT SIX**

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

**BUSINESS & PROFESSIONS CODE SECTION 17200, *et seq.***

**(ON BEHALF OF THE CALIFORNIA SUBCLASS)**

157. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

**A. "Unfair" Prong**

158. Under California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, et seq., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provide

to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

159. Prosper's conduct as alleged herein does not confer any benefit to consumers. Mishandling this data shows blatant disregard for its customers' and applicants' privacy and security.

160. Prosper's conduct as alleged herein causes injuries to consumers who do not receive services consistent with their reasonable expectations. Specifically, Prosper's customers and applicants would not have reason to believe that simply doing business with Prosper, or submitting their Private Information to apply for a loan, would place their Private Information in the hands of cybercriminals.

161. Prosper's conduct as alleged herein causes injuries to its customers and applicants, who entrusted Prosper with their Private Information and whose Private Information was leaked as a result of Prosper's unlawful conduct.

162. Prosper's failure to implement and maintain reasonable security measures was also contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure entities that are trusted with it use appropriate security measures. These policies are reflected in law, including, but not limited to, the FTC Act, Cal. Civ. Code §1798.81.5, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100.

163. Prosper's customers and applicants cannot avoid any of the injuries caused by Prosper's conduct as alleged herein.

164. The injuries caused by Prosper's conduct as alleged herein outweigh any benefits.

165. Prosper's conduct, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

166. Prosper could have furthered its legitimate business interests in ways other than its unfair conduct.

167. Prosper's conduct threatens consumers by misleadingly advertising its purported commitment to protecting Private Information while exposing customers' and applicants' Private Information to hackers. Prosper's conduct also threatens other entities, large and small, who play by

the rules. Prosper's conduct stifles competition, has a negative impact on the marketplace, and reduces consumer choice.

168. All of the conduct alleged herein occurs and continues to occur in Prosper's operations. Prosper's wrongful conduct is part of a pattern or generalized course of conduct repeated consistently.

169. Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Prosper from continuing to engage, use, or employ its unfair business practices.

170. Plaintiff and the Class have suffered injury-in-fact and have lost money or property as a result of Prosper's unfair conduct. Plaintiff provided his Private Information to Prosper reasonably believing and expecting that his Private Information would be safe and secure, when Prosper did not in fact ensure the security of Plaintiff's and Class Members' Private Information.

171. Plaintiff and the Class would not have given Prosper their Private Information, had they known that their Private Information was vulnerable to a data breach. Plaintiff and Class Members seek an order mandating that Prosper implement adequate security practices to protect customers' and applicants' Private Information. Additionally, Plaintiff and Class Members seek an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Prosper by means of Prosper's unfair and unlawful practices.

**B. "Fraudulent" Prong**

172. California Business and Professions Code Section 17200, et seq. considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

173. Prosper's advertising and representations that it adequately protects consumer information are likely to deceive members of the public into believing that Prosper can be entrusted with Private Information, and that Private Information gathered by Prosper is not in danger of being compromised.

174. As alleged in the preceding paragraphs, the material misrepresentations by Prosper detailed above constitute a fraudulent business practice in violation of California Business &



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Professions Code Section 17200.

175. Prosper knew or should have known of its fraudulent conduct.

176. Prosper could have implemented robust security measures to prevent the Data Breach but failed to do so.

177. Prosper's wrongful conduct is part of a pattern or generalized course of conduct.

178. Pursuant to Business & Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Prosper from continuing to engage, use, or employ its practice of false and deceptive representations about the strength or adequacy of its security systems. Likewise, Plaintiff and the Class seek an order requiring Prosper to disclose such misrepresentations.

179. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Prosper's fraudulent conduct. Defendants misled Plaintiff and the Class Members into doing business with it, or applying for a loan through its platform, with the promise that their data would be secure, when this was not the case.

180. Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court compelling Prosper to implement adequate safeguards to protect consumer Private Information retained by Prosper. This includes, but is not limited to: improving security systems, deleting data that no longer needs to be retained by Prosper, archiving that data on secure servers, adopting adequate and robust training policies and protocols for all employees entrusted with access to Personal Information and notifying all affected consumers in a timely manner.

**C. "Unlawful" Prong**

181. California Business and Professions Code Section 17200, et seq., identifies violations of any state or federal law as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

182. Prosper has engaged in "unlawful" business practices by violating multiple laws, including Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

(requiring timely breach notification), the FTC Act, 15 U.S.C. § 45, California's Consumer Privacy Act, Cal. Civ. Code § 1798.100, and California common law.

183. Prosper knew or should have known of its unlawful conduct.

184. As alleged in the preceding paragraphs, the misrepresentations by Prosper detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code section 17200.

185. Prosper could have furthered its legitimate business interests in ways other than by its unlawful conduct.

186. All of the conduct alleged herein occurs and continues to occur in Prosper's business. Prosper's unlawful conduct is part of a pattern or generalized course of conduct repeated on approximately thousands of occasions daily.

187. Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Prosper from continuing to engage, use, or employ its unlawful business practices.

188. Plaintiff and the Class have suffered injury-in-fact and have lost money or property as a result of Prosper's unlawful conduct. Plaintiff and the Class would not have given Prosper their Private Information, had they known that their Private Information was vulnerable to a data breach.

189. No adequate remedy at law. Plaintiff and the Class are entitled to equitable relief as no adequate remedy at law exists.

190. Prosper has not yet implemented adequate protections to prevent a future data breach, nor has it given an adequate notice to all affected Class Members, and therefore, the equitable relief requested here would prevent ongoing and future harm.

191. Injunctive relief is also necessary to prevent the members of general public from being misled by Prosper's misrepresentations regarding privacy and security of information.

192. Plaintiff and Class Members seek an order mandating that Prosper implement adequate security practices to protect Class Members' Private Information. Additionally, Plaintiff and the Class Members seek and request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Prosper by means of Prosper's unfair and unlawful practices.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

193. The equitable relief under the UCL (and also under unjust enrichment discussed below) creates a straightforward cause of action for violations of law (such as statutory or regulatory requirements related to representations and omissions made with respect to the Defendants' products or services). Furthermore, damages for non-UCL claims require additional elements or pre-suit notice letters, which would potentially eliminate possibility of providing damages to the entire class, while restitution would provide certainty and remedy for all affected victims.

194. In addition, discovery—which has not yet been provided and/or completed—may reveal that the claims providing legal remedies are inadequate. At this time, forcing an election of remedies at the initial pleadings stage, in the absence of completed discovery regarding class certification and merits, is premature and likely to lead to subsequent, potentially belated, and hotly contested motions to amend the pleadings to add equitable remedies based on a lengthy historical recount of discovery and analysis of voluminous exhibits, transcripts, discovery responses, document productions, etc., as well as related motions to seal confidential information contained therein.

**COUNT SEVEN**

**INVASION OF PRIVACY UNDER CALIFORNIA CONSTITUTION**

**CAL. CONST. ART. I, § 1**

**(ON BEHALF OF THE CALIFORNIA SUBCLASS)**

195. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

196. Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const., Art. I, § 1.

197. The right to privacy in California's Constitution creates a private right of action against private and government entities.

198. Plaintiff and California Subclass Members have and continue to have a reasonable expectation of privacy and interest in precluding the dissemination and/or misuse of their Private Information.

199. Plaintiff and California Subclass Members had a reasonable expectation that their Private Information entrusted with Prosper would remain confidential, and that Prosper would not share this information with third parties.

200. This invasion of privacy is serious in nature, scope, and impact because it relates to information that Plaintiff and the California Subclass Members intended to keep private. Moreover, it constitutes an egregious breach of the societal norms underlying privacy rights.

201. As a result of Prosper's actions, Plaintiff and California Subclass Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

202. Plaintiff and California Subclass Members have been harmed as a direct and proximate result of Prosper's invasion of their privacy and are entitled to injunctive relief.

203. Plaintiff and the California Subclass Members seek all other relief as the Court may deem just, proper, and available for invasion of privacy under the California Constitution.

## COUNT EIGHT

## DECEIT BY CONCEALMENT, CALIFORNIA CIVIL CODE SECTIONS 1709, 1710

## (ON BEHALF OF THE CALIFORNIA SUBCLASS)

204. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

205. Prosper knew or should have known that its internal systems were inadequate to protect Class Members' Private Information. Specifically, Prosper had an obligation to disclose to its customers and applicants that its internal systems were not adequate to safeguard their Private Information. Prosper did not do so. Rather, Prosper deceived Plaintiff and the Class by concealing the vulnerabilities in their systems.

206. Even after Prosper discovered that the Data Breach had impacted Private Information, it concealed it, and waited nearly three months before directly notifying customers and applicants, so they could know and take precautions against the Data Breach.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

207. California Civil Code §1710 defines deceit as, (a) "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true"; (b) "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true"; (c) "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact"; or (d) "[a] promise, made without any intention of performing it." Prosper's conduct as described herein therefore constitutes deceit of Plaintiff and the Class.

208. California Civil Code §1709 mandates that in willfully deceiving Plaintiff and the Class with intent to induce or alter their position to their injury or risk, Defendants are liable for any damages which Plaintiff and the Class thereby suffer.

209. As described above, Plaintiff and the Class have suffered significant harm as a direct and proximate result of Prosper's deceit and other unlawful conduct. Had Defendants been truthful about their security vulnerabilities or had promptly and adequately provided direct notice to all affected parties that their information had been compromised, Plaintiff and the Class would not have suffered some, if not all, of the harms attributable to the Data Breach.

**COUNT NINE**

**CALIFORNIA CONSUMER PRIVACY ACT, CALIFORNIA CIVIL CODE § 1798.100**

**(ON BEHALF OF THE CALIFORNIA SUBCLASS)**

210. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

211. Prosper is based in San Francisco, California.

212. Prosper also has significant revenue, with total net revenues of about $173.4 million for fiscal year 2024.[35]

213. Prosper is considered a "business" as that term is defined in Cal. Civ. Code. § 1798.140(c) because on information and belief, it has an annual gross revenue exceeding $25 million and it buys, receives, sells, or shares personal information of 50,000 or more consumers,

[35] *Form 10-K* , UNITED STATES SECURITIES AND EXCHANGE COMMISSION, https://www.sec.gov/Archives/edgar/data/1416265/000141626525000006/prosper-20241231.htm



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

households, or devices.

214. Plaintiff's and Class Members' PII is "nonencrypted and nonredacted personal information" consisting of social security number, names, addresses and other sensitive personal information. Cal. Civ. Code § 1798.150(a)(1). The Data Breach constitutes "an unauthorized access and exfiltration, theft, or disclosure" pursuant to Cal. Civ. Code § 1798.150(a)(1) because due to Defendants failure to implement reasonable and necessary security measures, they enabled third party criminals to access personal information and thus, caused unauthorized sharing of Plaintiff's and the Class Members' personal information.

215. Defendants had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of Plaintiff's and Class Members' PII to protect said PII.

216. Defendants breached the duty they owed to Plaintiff and Class Members described above. Prosper breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiff and Class Members; (b) detect the breach while it was ongoing; and (c) maintain security systems consistent with industry standards.

217. Defendants' breach of the duty they owed to Plaintiff and the Class Members described above was the direct and proximate cause of the Data Breach. As a result, Plaintiff and the Class Members suffered damages, as described above and as will be proven at trial.

218. Plaintiff and the Class Members seek injunctive relief in the form of an order enjoining Prosper from continuing the practices that constituted its breach of the duty owed to the Plaintiff and Class Members as described above

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests:

A. That the Court determines that this Action may be maintained as a Class Action, that Plaintiff be named as Class Representative of the Class, that the undersigned be named as Class Counsel of the Class, and that notice of this Action be given to Class Members;



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

B. That the Court enter an order declaring that Defendants' actions, as set forth in this Complaint, violate the laws set forth above;

C. That the Court enter an order providing declaratory and injunctive relief including specific steps, as outlined above, requiring Prosper to utilize appropriate methods and policies as necessary to remediate the harm suffered by Plaintiff and the Class Members as well as to prevent future harm and properly secure its data;

D. That the Court award Plaintiff and the Class damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

E. That the Court issue appropriate equitable and any other relief (including monetary damages, restitution, and/or disgorgement) against Prosper to which Plaintiff and the Class are entitled, including but not limited to restitution and an Order requiring Defendants to cooperate and financially support civil and/or criminal asset recovery efforts;

F. That the Court award Plaintiff and the Class pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law);

G. That the Court award Plaintiff and the Class their reasonable attorneys' fees and costs of suit;

H. That the Court award treble and/or punitive damages insofar as they are allowed by applicable laws; and

I. That the Court award any and all other such relief as the Court may deem just and proper under the circumstances.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury for all claims.

DATED: December 10, 2025

**CLARKSON LAW FIRM, P.C.**

*/s/ Yana Hart*
Ryan J. Clarkson, Esq.
Yana Hart, Esq.
Bryan P. Thompson, Esq.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Email: *rclarkson@clarksonlawfirm.com*
Email: *yhart@clarksonlawfirm.com*
Email: *bthompson@clarksonlawfirm.com*